Bertram Harnett, J.
Does the spirit of the Law Merchant of Medieval Scotland and England permeate a home improvement transaction in 1961 Long Island? The answer must be “ verily, no ”. But what has that to do with the case?
In late 1961, a passing “ workman ” stopped at Mr. and Mrs. Byas’ home in St. Albans, Long Island to say that some of the shingles on their roof needed repair. From that beginning, Mr. and Mrs. Byas contracted with Home-Wall Construction Co. (“Home-Wall”), the workman’s employer, for aluminum siding, storm windows and screens. The homeowners executed and delivered in payment to Home-Wall a promissory note for $2,913.60, payable in 60 equal monthly installments. Shortly after execution of the note, Home-Wall sold the note to Sterling Commercial (formerly known as Hamla Corporation), which sent a payment book to Mr. and Mrs. Byas. Sterling (Hamla) received no written notification from Mr. and Mrs. Byas that there was any problem with the work.
However, immediately after the installation, defects in the work materialized. The Byas complained, but continued to pay 13 monthly installments, until finally in despair they defaulted in their payments.
After Sterling began this suit, it assigned the Byas’ note to Mill Factors Corporation. At the start of the trial, the court «ranted the plaintiff’s motion to amend the caption to reflect *906 that ‘ ‘ Mill Factors Corporation,' as Assignee of Sterling Commercial Corp.” was the proper party plaintiff.
Although their pleadings contained no specific denial, the Byas denied, on trial, signing the notes. The court finds that they did in fact sign the notes. They concede they signed some papers, that the signatures on the notes appeared to be theirs and that they had paid the notes for over a year. Read portions of their examinations before trial confirm the finding. Their only testimonial evasion at the trial was that they could not be sure if the apparent signatures were really theirs because very clever forgers might have imitated their signatures and they did not remember the specific papers.
Actually, signatures on negotiable instruments are deemed admitted unless specifically denied in the pleadings. (CPLR 3015, subd. [e]; Uniform Commercial Code, § 3-307.) While Mr. and Mrs. Byas failed to make such a specific denial of signature in their answer, the point is moot since in the interests of justice the court did permit an inquiry and found that the notes were in fact signed by them.
Mill Factors’ claim to judicial success is based solely on its position as a “holder in due course ”, a bona fide purchaser of a piece of negotiable paper who takes entirely without defense as to poor workmanship in the contract which gave rise to the debt instrument.
Historically, the “ holder in due course ” doctrine upon which plaintiff relies has been an essential element in the development of mercantile society. (See 8 Am. Jur., Bills and Notes, § 355 et seq.’, Hawkland, Commercial Paper [1959] 76 et seq.) From medieval times, to the origins of commereiality, to the Industrial Revolution, to modern trade practice, the notion of credit and its necessity grew. The movement of currency or gold for every transaction was obviously infeasible. Moreover, bankers and financiers who enable the movement of goods on paper substituting for money exchange cannot be accountable for the defects of manufacturers or contractors with whom they have no dealing, control or even knowledge. Modern commercial legal practice, indeed, evolved from the Law Merchant, a body of rules used in medieval times by traders to far off places. (See Uniform Commercial Code, § 1-103; Black’s Law Dictionary [4th ed.], p. 1138.)
In modern banking practice, there remains manifest need for assurance in dealing with financial paper. Yet, the principle of fiscal certainty in application must bear a relevance to con *907 temporary activity if the permitted practice is to remain vital and consonant to the social need which it exists to serve. Blind, application of supposed principle is perilous to society, indeed to the legitimate interests which the principle is meant to foster. Few credit traditionalists would argue that conduct with immorality or unfairness at its root is entitled to the same protection as more noteworthy endeavor.
Accordingly, the law has tended to move away from the traditional and absolute inviolability of negotiable instruments where social policy has dictated its urgency and desirability. This has been the case, for instance, in notes originating from transactions where ordinary people in nonbusiness transactions buy personal things or seek to improve their homes.
An ordinary layman cannot be expected to understand fully the nature of financially sophisticated transactions. He may sign a note for a building contractor and fail to pay any heed to the subsequent 10-day notice sent by an unknown finance company pursuant to the Personal Property Law, unaware that by so doing he has waived his objections to the quality of the work done and irrevocably bound himself to make payments to the finance company which has purchased his note. When trouble later arises, his natural reaction is to cease making the installment payments. All too frequently, the contractor who performed the initial work is gone; and the helpless consumer is literally stranded.
While the initial intent of section 403 of the Personal Property Law was to remedy this situation and to protect the consumer from the “fly-by-night” contractors (Chase Manhattan Bank v. McLeish, 55 Misc 2d 1009, revd. on other grounds, 30 A D 2d 859) that statute proved insufficient protection for the financially unsophisticated. In recognition of this fact, and of other abuses which the “ holder in due course” doctrine has promoted by inapplicability of its principle, the Legislature has now abolished the rule in retail installment purchase circumstances, effective February 1, 1971. (See Personal Property Law, § 403, subd. 3, par. [a]; subd..6; as amd. by L. 1970, ch. 299.)
This legislation, however, comes too late for Mr. and Mrs. Byas. But notwithstanding this statutory tardiness, they must prevail even under the prior law. A holder in due course is a statutory creature and if he is to require exact compliance, he must by the same token render exact compliance. He must show a complete and bona fide right to recover, hut the finance *908 company here has failed to show that the promissory note was properly transferred to it.
It is undisputed that the principal amount of the promissory note was $2,913.60, representing a selling price of $1,980, credit life insurance premium of $65.70, and a credit service charge of $867.90. Subdivision 2 of section 403 of the Personal Property Law provides, in part, that: “ No such note [arising from a transaction involving repairs or alterations to real property] which does not set forth the amount of the credit service charge included in its face amount may be negotiated or otherwise transferred without the simultaneous delivery of the related retail instalment obligation ’ ’. Here, the credit service charge of $867.90 is not set forth in the note. There was no proof that the related retail installment obligation was delivered simultaneously with, or even subsequent to, the transfer of the note from Home-Wall to Sterling (Hamla), or from Sterling to Mill Factors. Indeed, it was not even clear that the notice under section 403 (subd. 3, par. [a]) of the Personal Property Law was in fact sent on the conveyance from Home-Wall to Sterling (Hamla), and no proof of such a notice at all was offered in the transfer from Sterling to Mill Factors.
The effect of statutory disqualification under subdivision 2 of section 403 is not plain. On the one hand, the statute may mean that since the note was not lawfully transferred to it, Mill Factors could not sue on the note. It would be a party to an illegal transaction. On the other hand, the statute may simply mean that since the obligation has not been the subject of negotiation or other transfer, the holder cannot be a holder in due course or transferee of a separate debt instrument, and, accordingly has only the rights of the contractor who originally dealt with the debtor. Since there was no proof to rebut the Byas’ testimony of bad workmanship or materials by the contractor, Mill Factors must lose either way subdivision 2 of section 403 is interpreted. Moreover, failure to notify under section 403 (subd. 3, par. [a]) of the Personal Property Law would cause the same result.
The defense against Home-Wall is available against Mill Factors, and the plaintiff’s burden of proof is not carried.
Accordingly, judgment will be entered for the defendants dismissing the complaint, without costs to any party.